UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH WHITE, | ) | CASE NO. 5:22-cv-130 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| BARRINGTON GOLF CLUB, *et al.*, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On January 25, 2022, *pro se* plaintiff Kenneth White ("plaintiff" or "White"), a prisoner at USP Thomson, filed this action in federal court seeking to recover damages associated with the loss of a golf club membership. (Doc. No. 1 (Complaint).) On April 13, 2022, White filed an amended complaint against defendants Barrington Golf Club ("Barrington"), BGC LLC ("BGC"), Monte Ahuja ("Ahuja"), and Diane Ford ("Ford") (collectively "defendants"), and this pleading is now the operative complaint.[1] (Doc. No. 6 (Amended Complaint).)

Now before the Court is defendants' motion to dismiss the amended complaint. (Doc. No. 18 (Motion).) Plaintiff opposes the motion (Doc. No. 23 (Opposition)), and defendants have filed a reply (Doc. No. 24 (Reply)). Because this Court lacks jurisdiction, defendants' motion is GRANTED, and this action is DISMISSED.

---

[1] An amended complaint supersedes the original complaint and becomes the only "legally operative complaint[.]" *Parry v. Mohawk Motors of Mich., Inc*., 236 F.3d 299, 306 (6th Cir. 2000); *see Othen v. Ann Arbor Sch. Bd*., 699 F.2d 309, 311 (6th Cir. 1983).

I. **BACKGROUND**

In 2006, White acquired an equity membership in Barrington from another member for the purchase price of $30,000.00, which White alleges in conclusory fashion "was valued at $50,000.00." (Doc. No. 6 ¶ 1.) In 2011, he contacted Barrington to request that his membership be placed into escrow. (*Id*. ¶ 2.) When White contacted Barrington again in 2012 to direct Barrington to sell his membership, he was informed "that he could not sell his membership at that time due to [Barrington] having financial troubles." (*Id*.) He alleges that he has since attempted to determine the status of his equity membership but has been "stonewall[ed]" by defendants by means of "continuous ploys and stories of foreclosure filings and other legal actions[.]" (*Id*. ¶ 3.) He claims that defendants acted "all without once giving any notice to" him that Barrington was "restructured to BGC[.]" (*Id*. ¶¶ 3, 10.)

Though the amended complaint is not entirely clear, the pleading purports to raise the following claims: breach of fiduciary duty (*id*. ¶ 4), breach of contract (*id*. ¶ 5), negligent misrepresentation (*id*. ¶ 6), fraud (*id*. ¶ 7), misappropriation of funds (*id*. ¶ 8), conversion (*id*. ¶ 9), dissolution of partnership (*id*. ¶ 11), and punitive damages (*id*. ¶ 12). (*See id*. ¶ 14 (listing claims).) White seeks $72,000 in compensatory damages—representing the $50,000.00 alleged value of his original investment, plus 9% interest—and $600,000.00 in punitive damages. He also requests costs and attorney's fees. (*Id*. at 11.[2])

Defendants now move for dismissal, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, maintaining that the amended complaint fails to state claims upon which relief may be

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

granted and that the claims are time-barred. Additionally, defendants posit that federal jurisdiction is lacking, that White failed to perfect service upon them, and that White failed to show proof of service as directed by the Court. Because it is a threshold issue, and because it is dispositive of defendants' motion, the Court begins by considering whether it has jurisdiction to hear this matter. *See Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000) (holding that the presence or absence of jurisdiction is the "first and fundamental question presented by every case brought to the federal courts").

## II. FEDERAL JURISDICTION

### A. Standard of Review

Defendants challenge the Court's jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). A motion under Rule 12(b)(1) may be brought as a facial attack—that is, a challenge to the sufficiency of the complaint—or a factual attack—taking in evidence beyond the pleadings. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). Courts entertaining a factual attack have "wide discretion" to consider affidavits and documents "to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The Court may also take judicial notice of its own records, in addition to other matters. *See* Fed. R. Evid. 201(b)(2); *United States v. Doss*, 563 F.2d 265, 269 n.2 (6th Cir. 1977). Regardless of which sort of attack is presented, the plaintiff has the burden to prove the jurisdictional facts, *Cartwright*, 751 F.3d at 760, but all parties should have the opportunity to present evidence on the issue. The Court "has the power to weigh [that] evidence and determine the effect of that evidence on the court's authority to hear the case." *Id*. at 759–60.

### B. Law and Discussion

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). In other words, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S. Ct. 1326, 89 L. Ed. 2d 501 (1986). "There are two types of subject matter jurisdiction bestowed upon the federal district courts: federal question jurisdiction and diversity jurisdiction." *Lee v. Money Gram Corp. Off.*, No. 15-cv-13474, 2016 WL 3524332, at *1 (E.D. Mich. May 23, 2016), *report and recommendation adopted*, 2016 WL 3476704 (E.D. Mich. June 27, 2016). Federal question jurisdiction exists when the civil action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction exists in civil actions between citizens of different states where the matter in controversy exceeds "the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a)(1).

### 1. There is No Federal Question Jurisdiction

In order to invoke the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, a plaintiff must allege facts showing the cause of action involves an issue of federal law. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). While the amended complaint identifies federal question jurisdiction as the basis for this Court's jurisdiction (*see* Doc. No. 6, at 4), White cites no federal statutes, laws, or treaties giving rise to federal question jurisdiction. The amended complaint is also devoid of any factual allegations that would otherwise give rise to any federal statutory or constitutional provisions sufficient to invoke the Court's

jurisdiction under § 1331. Instead, the amended complaint merely lists White's state law claims.[3] (*Id.*) Further, White abandoned any argument that the amended complaint raises a federal question by failing to respond to defendants' argument that federal question jurisdiction is lacking. (*See* Doc. No. 18, at 18–20.) He has, therefore, waived any argument that federal question jurisdiction exists and, in any event, the Court finds no evidence that the amended complaint satisfies the requirement for federal jurisdiction under § 1331.[4] *See Humphrey v. U.S. Att'y Gen. Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (stating that "where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived" (citations omitted)).

2. *There is No Diversity Jurisdiction*

This leaves diversity jurisdiction. Under 28 U.S.C. § 1332, federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). For diversity to lie, diversity must be complete, meaning that the citizenship of the plaintiff must be "diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*,

---

[3] Plaintiff makes no argument that his claims arise out of federal common law, and case law would not support such an argument. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1249–52 (6th Cir. 1996) (noting that there are no federal common law claims for fraud and negligent misrepresentation). Moreover, while *pro se* pleadings are entitled to a liberal construction, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), the district court is not required to "conjure allegations" on behalf of a *pro se* litigant or guess at the nature of his claims. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quotation marks and citation omitted); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing cases).

[4] In response to a show cause order, filed more than five months before defendants' motion to dismiss, White suggested that he has pled a federal claim under the Investment Company and Advisers Act of 1940 (the "Act"), 18 U.S.C. § 80a-1(b). (*See* Doc. No. 11 ("Motion to Oppose" Dismissal for Want of Prosecution/Failure to Prosecute) ¶ 9.) The amended complaint, however, does not allege any facts that would support a claim under the Act or, if believed, would demonstrate that any of the defendants fall within the definition of "investment companies" or "investment advisers" under the Act. *See* 15 U.S.C. §§ 80a-3(a)(1) and 80a-2(a)(20).

519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996); *see Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978) (noting that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff" (emphasis in original)).

### a. The Parties are Not Diverse

The amended complaint alleges that both White and Ford are citizens of Ohio. (Doc. No. 6, at 4.) The amended complaint makes no representations regarding the citizenship of any other party. This should end the inquiry as—by his own admission—White shares the same citizenship of at least one of the defendants. Still, because the amended complaint lists as White's residence the address of the federal penitentiary in Bradford, Pennsylvania where, until recently, White was housed (*see id*. at 2), and White argues in his opposition that he "has not actually lived in Ohio for many years[,]" the Court finds that it must comment briefly on diversity law as it relates to prisoners.[5] (*See* Doc. No. 23, at 8.)

A person's citizenship for purposes of diversity jurisdiction is his "domicile." *See Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994); *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973). "Domicile" is determined by physical presence in the state and either an intention to reside there indefinitely or the absence of an intention to reside elsewhere. *Stifel*, 477 F.2d at 1120. "[T]here is a rebuttable presumption that a prisoner retains his former domicile [during] incarceration." *Johnson v. Corr. Corp of Am.*, No. 00-4439, 2001 WL 1298982, at *2 (6th Cir. Aug. 8, 2001) (citing *Stifel*, 477 F.2d at 1124); *see Smith v.*

---

[5] According to the Bureau of Prison's website, White is currently serving a federal sentence at USP Thomson, in Thomson, Illinois. White's anticipated release date is February 1, 2028. (*See* https://www.bop.gov/inmateloc/, last visited June 21, 2023.)

*Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006) (noting that it is generally presumed that a prisoner remains "a citizen of the state of which he was a citizen before his incarceration, even if he is subsequently incarcerated in another state" (citing *Sullivan v. Freeman*, 994 F.2d 334, 337 (7th Cir. 1991)); *see also Stifel*, 477 F.2d at 1121) (noting that "a person cannot acquire a domicile of choice in a place if he is there by virtue of physical or legal compulsion").

Although at the time this motion was being briefed, White was incarcerated in Pennsylvania, in May 2023, White was relocated and is now serving his sentence at USP Thomson, a BOP facility in Thomson, Illinois. (Doc. No. 28.). White makes no allegations that Pennsylvania (or, now, Illinois) was his pre-incarceration domicile, that he considers Pennsylvania (or Illinois) to be his current domicile, or that he intends to remain in Pennsylvania (or Illinois) after his incarceration. Rather, as previously indicated, White concedes that he previously lived in Ohio, and even lists it as the place of his citizenship.[6] (*See* Doc. No. 6, at 4; Doc. No. 23, at 8.) Based upon this record, the Court cannot find that diversity jurisdiction is satisfied. *See, e.g., Cornell v. Fox News Network*, No. 1:19-cv-698, 2020 WL 4530598, at *1 (S.D. Ohio Aug. 6, 2020) (noting "[p]laintiff makes no allegations that he considers New Jersey to be his current domicile, or that he intends to remain in New Jersey after he is released from prison"); *Caesar v. Rosstead*, 593 F. Supp. 2d 91, 94 (D.D.C. 2009) (plaintiff-prisoner did not establish that his state of incarceration

---

[6] In response to the Court's show cause order, White alleged that he a "resident and citizen of the State of Pennsylvania." (Doc. No. 11, at 4.) White offers no facts (other than the place in which he was then incarcerated) in support of this conclusory statement. *See, e.g., Hawkins v. Bruner*, No. 1:12-cv-1359, 2012 WL 4919811, at *1 (N.D. Ohio Oct. 16, 2012) (rejecting prisoner's argument that his citizenship was in the state in which he was housed where he made no allegations in support). White's internally inconsistent filings fail to satisfy his burden of demonstrating this Court's jurisdiction. *See generally Kokkonen*, 511 U.S. at 377 (holding that the party seeking to invoke a federal court's jurisdiction bears the burden of demonstrating the existence of federal jurisdiction (citation omitted)). Moreover, that White has recently been relocated by the BOP to a facility in a different state (Illinois) further illustrates White's shortcoming in failing to satisfy his burden.

7

was his domicile).

White argues, however, that "the Court still has jurisdiction over this matter because the defendant BGC[] is an entity out of Delaware." (Doc. No. 23, at 8 (citing Doc. No. 23-2 (Promissory Note).) This argument fails as a matter of law. Initially, the Court notes that, for purposes of diversity jurisdiction, "a limited liability company is not treated as a corporation and has the citizenship of its members." *Homfeld II, L.L.C. v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002). White offers no information regarding the citizenship of the members of BGC. Accordingly, White has not carried his burden with respect to this defendant. Even if he had, and each of the members of the limited liability company was diverse from White, the argument would still fail because White must prove that he is diverse from each and every defendant. *See Owen Equip. & Erection Co.*, 437 U.S. at 373. As previously observed, White concedes that defendant Ford is a citizen of Ohio. (*See* Doc. No. 6, at 4.)

Because White has not alleged facts that would establish that all defendants are citizens of a state other than Ohio, White has not established the existence of diversity jurisdiction.

### b. The Jurisdictional Amount is Not Satisfied

The Court also finds that White has failed to demonstrate that he has satisfied the jurisdictional amount of $75,000.00. While he states that he paid $30,000.00 for the golf club membership, he alleges in conclusory fashion that it "was valued at $50,000.00." (Doc. No. 6 ¶ 1.) White fails to allege any facts that would support this conclusion, and his "subjective belief that [the golf club membership] was worth [considerably more than he paid], without more, is insufficient to establish the statutory jurisdictional amount." *See Randall v. Pitzer*, 23 F. App'x 532, 534 (6th Cir. 2001) (citation omitted). Of course, to the extent his $50,000.00 valuation was

sufficient (and it was further assumed that the Court could factor in White's inflated estimation of interest), the purported estimated current value of $72,000.00 (*see* Doc. No. 1, at 11) would not satisfy the $75,000.00 threshold amount.

White's unsupported request for $600,000.00 in punitive damages (*id.*) does not bring him any closer to satisfying the jurisdictional amount. While a good faith request for punitive damages can support the jurisdictional amount necessary to establish diversity jurisdiction, the allegations in the amended complaint fall short of establishing his right to these damages under Ohio law. Punitive damages are not available for breach of contract in Ohio. *Ketchman v. Miller*, 136 N.E. 145, 146 (Ohio 1922). This is true "irrespective of the motive on the part of the defendant and no matter how willful the breach[.]" *Kruse v. Vollmar*, 614 N.E.2d 1136, 1141 (Ohio Ct. App. 1992) (citation omitted).

"An exception to this general rule is when the actions which constitute the breach of contract also amount to an independent, willful tort." *Spalding v. Coulson*, 661 N.E.2d 197, 207 (Ohio Ct. App. 1995). Even where a defendant's actions amount to a willful tort, however, a plaintiff in Ohio must demonstrate the existence of actual malice in order to recover punitive damages. *Berge v. Columbus Cmty. Cable Access*, 736 N.E.2d 517, 542 (Ohio Ct. App. 1999) (citations omitted). "Actual malice consists of either a state of mind characterized by hatred, ill will or a spirit of revenge or a conscious disregard for the rights and safety of others which results in a strong probability of substantial harm to the affected persons." *Spalding*, 661 N.E.2d at 207. Even in cases of fraud, a plaintiff must demonstrate "that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious" in order to recover punitive damages. *Elderlite Exp., Inc. v. Capitol City Trailers, Inc.*, No. 2:06-

cv-737, 2009 WL 891762, at *4 (S.D. Ohio Mar. 31, 2009) (quotations marks and citation omitted).

Applying even the most liberal construction to White's allegations, the Court finds the amended complaint fails to set forth any facts showing actual malice, ill will, or gross or egregious fraud to justify an award of punitive damages. It appears, therefore, to a legal certainty that White cannot in good faith claim the jurisdictional amount because there is no basis in Ohio law for the recovery of punitive damages in this case. For this additional reason, the Court finds that it lacks subject matter jurisdiction on the basis of diversity of citizenship. Accordingly, the Court cannot hear White's state law claims, and the amended complaint is subject to dismissal.[7]

### III. STATUTES OF LIMITATIONS

Even if diversity jurisdiction were found to exist, White's claims are time-barred. "Statutes of limitations foster important public policies: ensuring fairness to the defendant, encouraging prompt prosecution of causes of action, suppressing stale and fraudulent claims, and avoiding the inconvenience engendered by delay and by the difficulty of proving older cases." *Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1249 (Ohio 2009). In determining the appropriate statute of limitations

---

[7] Dismissal would be appropriate for the additional reason that White failed to timely perfect service upon defendants. On November 10, 2022, the Court entered an order directing White to serve defendants in accordance with Fed. R. Civ. P. 4(c)(1) & m and imposed a deadline of January 5, 2023 to perfect service and show proof. (Doc. No. 13 (Order).) The show cause order cautioned White that failure to timely comply could result in dismissal of any defendant who has not been properly served. (*Id*. at 2.) On December 27, 2022, White filed a notice purporting to show that he served defendants. (Doc. No. 16.) Attached to the notice are certified mail return receipts addressed to each defendant. (Doc. No. 16-1.) Each return receipt identifies White as the sender. (*Id*. at 2–9.) This does not comply with the rules governing service. White's purported attempt to effectuate certified mail service *himself* is contrary to the Federal Rules of Civil Procedure and the Court's local rules. Only a non-party may serve a summons and complaint. *See* Fed. R. Civ. P. 4(c)(2). Additionally, Local Rule 4.2(a) allows service by certified mail when the Clerk causes it to be mailed and then, only after the Clerk is able to inspect the service from an unsealed envelope beforehand to "verify the contents prior to mailing." LR 4.2(a). Further, Local Rule 4.2(b) requires the Clerk to "enter the fact of mailing on the appearance docket and make a similar entry when the return receipt is returned." LR 4.2(b). The docket does not reflect that White complied with these local rules.

for a given case, the Ohio Supreme Court has directed courts to look to the "essential character" of the plaintiff's claims. *Id*. (quotation marks and citation omitted).

"Ohio law recognizes that a cause of action accrues 'when the right to prosecute it begins.'" *Kanally v. Ameritech Ohio Co.*, No. 87472, 2008 WL 4068185, at *3 (Ohio Ct. App. Sept. 4, 2008) (quoting *Singh v. ABA Publ'g/Am. Bar Assoc.*, No. 02AP-1125, 2003 WL 21027897, at *4 (Ohio Ct. App May 8, 2003)); *see Lutz v. Cheasapeake Appalachia, L.L.C.*, 717 F.3d 459, 473 (6th Cir. 2013) (holding that, generally, a cause of action accrues when the wrongful act is committed (citing Ohio law)). Where appropriate, however, Ohio courts invoke the "discovery rule," which provides that "a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 209 (Ohio 1989) (citations omitted).

Here, White's claims for fraud and breach of fiduciary duty are governed by the four-year statute of limitations set forth in Ohio Rev. Code § 2305.09. *Cundall*, 909 N.E.2d at 1249 (holding that "[c]laims for fraud and breach of fiduciary duty based on fraud are governed by the four-year statute of limitations set forth in [Ohio Rev. Code] § 2305.09, unless the claim is not discovered despite reasonable diligence" (citing *Investors REIT One*, 546 N.E.2d at 209)). White's conversion and misappropriation claims are also barred by the four-year statute of limitations set forth in § 2305.09. *See Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1301 (Ohio 1984) (finding misappropriation and conversion claims untimely because plaintiff "possessed knowledge sufficient to lead a reasonably prudent person to make inquiry and had such inquiry been made with reasonable care and diligence, it would have led to the discovery of the wrongdoing" within the four-year statute of limitations specified in Ohio Rev. Code § 2305.09(B)). White's breach of

11

contract claim is governed by an eight-year statute of limitations set forth in Ohio Rev. Code § 2305.06 for written contracts.[8]

Defendants argue that, by his own admissions, White was aware of Barrington's "financial troubles" by no later than 2012. (Doc. No. 6 ¶¶ 2–3.) Further, the "stories" he alleges were conveyed by defendants of "foreclosure filings and other legal actions" would have further compelled the reasonable person in "White's shoes" to investigate the matter in order to protect his rights. (Doc. No. 18, at 8–9.) Defendants posit that "[t]he most obvious course of action of a person in White's position under similar circumstances would have been to conduct an in person or online search of the foreclosure docket at the Portage County Court of Common Pleas or engage counsel for that purpose." (*Id.* at 9.) Such a search would have permitted White to confirm that BGC did in fact initiate a foreclosure action against Barrington on September 26, 2011, ultimately resulting in BGC acquiring Barrington's assets at public auction, and further resulting in Barrington formally dissolving on June 12, 2012. (*Id.* at 9–10.)[9] According to defendants, any

---

[8] In 2007, Ohio's statute of limitations for breach of written contract claims was 15 years, but in September 2012, it was shortened to 8 years. Ohio Rev. Code § 2305.06 (2007, 2012). It remained eight years until 2021, when it was further shortened to a six-year period. § 2305.06 (2021). However, for claims accruing prior to September 28, 2012 (when the statute was shortened), the limitation period is 15 years from the date of accrual or 8 years from September 28, 2012, whichever is less. *Lee v. Equity Trust Co.*, No. 1:21-cv-1052, 2021 WL 8342838, at *6 (N.D. Ohio Dec. 30, 2021) (report and recommendation (citing Ohio law)). Because it is unclear from the amended complaint when in 2012 White contacted defendants, and giving White every benefit of the doubt, the Court applies the longer, eight-year limitations period applicable to claims accruing prior to September 28, 2012. Moreover, to the extent that White's claim of dissolution of partnership is a cause of action under Ohio law, it would be governed by the terms of the equity agreement and would, therefore, be considered a contract claim and subject to the same 8-year period in § 2305.06. The remaining claim—punitive damages—is not a claim that is recognized under Ohio law. *See Moskovitz v. Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 342 (Ohio 1994) (holding that an individual and separate claim for punitive damages is not allowed under Ohio law).

[9] In support, defendants append to their motion various documents from the foreclosure proceedings and from the Ohio Secretary of State. (*See* Doc. No. 18-1 (Certificate of Dissolution); Doc. No. 18-2 (Complaint in Foreclosure).) Defendants also reference the docket from the Portage County Court of Common Pleas in *BGC, LLC v. Barrington Golf Club, Inc., et al.*, No. 2011-cv-1259 (Portage Cnty. Ct. of Common Pleas 2011). It is well settled that the Court may consider these public documents and take judicial notice of state court proceedings without converting defendants' motion to dismiss into a motion for summary judgment. *See Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

reasonable efforts by White to inquire would have equipped him with sufficient knowledge to appreciate that his equity membership had been compromised or no longer existed, potentially giving rise to his claims. (*Id*. at 10.) Given that White was aware of his claims sometime in 2012, at the latest, defendants insist that all of his claims, filed ten years later, would be time-barred.

White disagrees. He argues that he was never "actually" put on notice by defendants of the foreclosure action involving Barrington. (Doc. No. 23, at 6.) Rather, he did not actually become aware of the foreclosure until December 2021, when Ford mailed White a copy of a letter sent to members informing them BGC would be filing a foreclosure action against Barrington. (*Id*.; *see* Doc. No. 6-3, at 1.)[10] It is White's position that the statute of limitations should begin to run from the date of the letter (December 9, 2021). (Doc. No. 23, at 6; *see* Doc. No. 6-3, at 1.)

When White received "actual" knowledge of the foreclosure is irrelevant to the present inquiry. "[U]nder Ohio law, it is 'constructive knowledge of facts' that triggers the statute of limitations for fraud-based claims under the discovery rule. That standard requires only 'facts sufficient to alert a reasonable person of the *possibility* of fraud.'" *Joseph v. Joseph*, No. 19-3350, 2022 WL 3536273, at *8 (6th Cir. Aug. 18, 2022) (quoting *Cundall*, 909 N.E.2d at 1250 (emphasis in original)). The discovery rule "impose[s] upon the plaintiff a positive duty to use diligence in discovering the existence of a cause of action." *Med. Mut. of Ohio v. K. Amalia Enters. Inc*., 548 F.3d 383, 391 (6th Cir. 2008) (quoting *Herm v. Stafford*, 663 F.2d 669, 682 (6th Cir. 1981)). "When

---

[10] In this correspondence, Ford informs White that she has "sent [him] several of the enclosed letters over the years." (Doc. No. 6-3, at 1.) Defendants complain that White conveniently does not attach the referenced enclosed letter from 2012. It argues that, had White attached the referenced letter to the amended complaint, it would be clear that White received actual notice of the foreclosure plans in 2012. (Doc. No. 18, at 8.) White insists, however, that defendants have not demonstrated that he actually received the referenced letter at any time before Ford's correspondence in December 2021. (Doc. No. 23, at 7.) The Court need not determine whether it may consider this undisclosed letter on a motion to dismiss because it is clear from the existing record that the claims are time-barred.

13

determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry[.]" *Cundall*, 909 N.E.2d at 1250 (quotation marks and citations omitted).

Here, by his own admissions, White was on notice as early as 2012 that Barrington was experiencing financial troubles that prevented the sale of his equity membership. (Doc. No. 6 ¶ 2.) He also knew during this time period—again by his own admission—of possible foreclosure proceedings. (*Id.* ¶ 3.) The Court finds that such knowledge would have led a fair and prudent individual to use ordinary care and diligence to make further inquiry. Upon such an inquiry, White would have discovered the foreclosure proceedings, the sale of Barrington's assets, and Barrington's dissolution, providing him with everything he needed to timely bring his claims in federal or state court. Accordingly, the Court finds that, to the extent it has jurisdiction, all of White's tort claims are time-barred.[11]

---

[11] A cause of action for breach of contract accrues at the time "the complaining party suffers actual damages as a result of the alleged breach." *Kincaid v. Erie Ins. Co.*, 944 N.E.2d 207, 210 (Ohio 2010) (quotation marks and citation omitted). Because the discovery rule does not apply to Ohio breach of contract claims, the Court finds that White's breach of contract claim accrued when his equity membership was sold at public auction on February 13, 2012. *See Taylor-Winfield Corp. v. Huntington Bank*, No. 2021-T-0015, 2021 WL 4477453, at *4 (noting that "no Ohio Court has ever applied the discovery rule to a claim for breach of contract" (quotation marks and citations omitted)). (*See BGC, LLC v. Barrington Golf Club, Inc., et al.*, No. 2011-cv-1259 (Portage Cnty. Ct. of Common Pleas 2011) (docket).) As a result, White's contract claim is also untimely.

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED, and this case is DISMISSED.

**IT IS SO ORDERED**.

Dated: June 22, 2023

**HONORABLE SARA LIOI
UNITED STATES DISTRICT COURT
CHIEF JUDGE**